IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DAMON ANTOINE QUICK,            )
                                )
          Petitioner,           )
                                )
     v.                         )         1:12CR291-1
                                )         1:15CV219
UNITED STATES OF AMERICA,       )
                                )
          Respondent.           )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's "Independent Action to Obtain Relief from Judgment or Order pursuant to Rule 60(b) Fed. R. Civ. P." (Docket Entry 78 at 1 (all-caps font omitted) (the "instant Motion")). Because the instant "[M]otion in [this] habeas proceeding [] attacks 'the substance of th[is C]ourt's resolution of a claim on the merits'[, it] is not a true Rule 60(b) motion, but rather a successive habeas petition," United States v. McRae, 793 F.3d 392, 397 (4th Cir. 2015) (quoting Gonzalez v. Crosby, 545 U.S. 524, 531-32 (2005)), which "may not be filed in [this C]ourt without preauthorization from [the United States C]ourt of [A]ppeals [for the Fourth Circuit] under [28 U.S.C.] § 2244(b)(3)(A)," McRae, 793 F.3d at 397. The record, however, reflects no such authorization; thus, the Court should dismiss the instant Motion. Alternatively, the Court should deny "relief under Rule 60(b)[ because Petitioner cannot meet his burden

to] show 'timeliness, . . . lack of unfair prejudice to the opposing party, and exceptional circumstances.'" Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (quoting Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984)).

INTRODUCTION

A grand jury for this District indicted Petitioner for:

1) six counts of Hobbs Act robbery (see Docket Entry 1 at 1-8 (charging Petitioner in Counts One, Three, Five, Seven, Nine, and Eleven with "unlawfully obstruct[ing], delay[ing], and affect[ing] commerce . . . and the movement of articles and commodities in such commerce, by robbery, . . . in that [he] did knowingly and unlawfully take and obtain property . . . belonging to [businesses operating in interstate commerce], from persons and in the presence of others against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person, that is, by entering the business[es] and brandishing a firearm, and by pointing a firearm at [] employees and demanding that they surrender United States currency; in violation of Title 18, United States Code, Section 1951(a)"));

2) one count of attempted Hobbs Act robbery (see id. at 9-10 (charging Petitioner in Count Thirteen with "unlawfully attempt[ing] to obstruct, delay, and affect commerce . . . and the movement of articles and commodities in such commerce, by robbery, . . . in that [he] did knowingly and unlawfully attempt to take and

2

obtain property . . . belonging to [a business operating in interstate commerce] from persons and in the presence of others against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person, that is, by entering the business and brandishing a firearm, and by pointing a firearm at [] employees and ordering them to the back of the store; in violation of Title 18, United States Code, Section 1951(a)" (emphasis added)));

3) six counts of violating 18 U.S.C. § 924(c)(1)(A)(ii) ("Section 924(c)"), in that Petitioner, "during and in relation to a crime of violence . . ., that is, interference with commerce by robbery, in violation of [the Hobbs Act], did knowingly carry and use, by brandishing, a firearm" (Docket Entry 1 at 2-3, 5-9 (Counts Two, Four, Six, Eight, Ten, and Twelve)); and

4) one count of violating Section 924(c), in that Petitioner, "during and in relation to a crime of violence . . ., that is, attempted interference with commerce by robbery, in violation of [the Hobbs Act] did knowingly carry and use, by brandishing, a firearm" (id. at 10-11 (emphasis added) (Count Fourteen)).

Pursuant to a written Plea Agreement (Docket Entry 13), Petitioner pleaded guilty to all six of the Hobbs Act robbery counts (i.e., Counts One, Three, Five, Seven, Nine, and Eleven), the lone attempted Hobbs Act robbery count (i.e., Count Thirteen), and the last Section 924(c) count (i.e., Count Fourteen) (see

3

Docket Entry 22). The United States filed a written Factual Basis supporting Petitioner's guilty plea, which documented (inter alia) that he brandished a firearm in all six Hobbs Act robberies and the lone attempted Hobbs Act robbery (as charged in Counts One, Three, Five, Seven, Nine, Eleven, and Thirteen of the Indictment). (See Docket Entry 12.) Petitioner (through counsel) did not contest that aspect of the Factual Basis at the plea hearing. (See Docket Entry 22 at 13-15 (reflecting reservation of "right to challenge [] at the time of sentencing" only "factors like victim abduction, victim restraint, things of that nature").)

The United States Probation Office thereafter prepared a Presentence Investigation Report ("PSR"), which included this special offense characteristic as to Counts One, Three, Five, Seven, Nine, and Eleven: "[b]ecause a firearm was otherwise used, increase by 6 levels" (Docket Entry 49, ¶¶ 22, 29, 36, 43, 50, 57; see also id., ¶¶ 20 ("Count Fourteen, which charges Brandishing a Firearm During a Crime of Violence, carries a mandatory consecutive term of imprisonment . . . . Any specific offense characteristic for the possession, use, or discharge of a firearm is not applied in respect to the guidelines for the underlying offense in Count Thirteen." (underscoring omitted) (citing U.S.S.G. § 2K2.4, comment. (n.4))), 116 ("[T]he guideline imprisonment range is 121 months to 151 months for Counts One, Three, Five, Seven, Nine, Eleven, and Thirteen. For Count Fourteen, a mandatory term of 7

4

years imprisonment is required by statute." (emphasis and internal citation omitted))). Petitioner "filed no objections." (Docket Entry 23 at 4; see also id. at 37 (recording concession that Petitioner "ha[d] not objected to the guidelines . . . because they are correctly calculated").) At sentencing (before now-retired United States District Judge James A. Beaty, Jr.), "[t]he Court f[ound] that the calculations resulting from an application of the guidelines [in the PSR] were correctly determined." (Id. at 47; see also id. at 38 (Judge Beaty (in response to statement by Petitioner's counsel that Petitioner did not bind his victims): "[o]f course, when you're holding a gun on them, you don't need to tie them up"); Docket Entry 52 at 1 (checking box on Statement of Reasons portion of Judgment confirming that "[t]he [C]ourt adopt[ed] the [PSR] without change").)

The Court (per Judge Beaty) subsequently determined, as to Counts One, Three, Five, Seven, Nine, Eleven, and Thirteen, "that a sentence in the middle of the guidelines provide[d] an adequate basis to accomplish the goals of [18 U.S.C. §] 3553(a)" (Docket Entry 23 at 49) and therefore imposed concurrent prison "term[s] of 132 months" (id. at 50). Consistent with the dictates of Section 924(c)(1)(A)(ii) and (D)(ii), Judge Beaty also imposed, "[a]s to Count Fourteen, . . . a [prison] term of 84 months to run consecutively to the concurrent sentences imposed in Counts One, Three, Five, Seven, Nine, Eleven, and Thirteen" (id.). On direct

5

appeal, the Fourth Circuit affirmed Petitioner's convictions and sentence. (See Docket Entry 36.)

Petitioner then sought relief under 28 U.S.C. § 2255, for ineffective assistance by his counsel in failing to file a suppression motion, to explain the burden of proof borne by the United States, to focus on the lack of witness identification due to the robber's use of a mask, to pursue a competency hearing, and to refrain from advising Petitioner to enter into his Plea Agreement (as well to give certain answers to questions during his plea colloquy). (See Docket Entry 39, ¶ 12; see also Docket Entry 41 (elaborating on those claims and raising additional ineffectiveness claims regarding Speedy Trial Act, duplicitous/multiplicitous charges, identification procedures, and submission of an Anders brief on direct appeal, as well as prosecutorial misconduct claim).) While that Section 2255 motion remained pending, Petitioner moved to supplement it with a claim that the decision in Johnson v. United States, 576 U.S. 591 (2015) (invalidating residual clause of definition of violent felony under Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii)), also "applies to [Section] 924(c)(3)(B)['s definition of 'crime of violence'] because the language in [Sections] 924(c) and 924(e) is very similar" (Docket Entry 48 at 2).[1]

---

[1] "The Supreme Court recently agreed with the [] argument that the [Section] 924(c) residual clause is unconstitutionally vague." (continued...)

Via an Order entered by United States District Judge Catherine C. Eagles on March 5, 2020, "[t]he Court [] grant[ed Petitioner's] motion to supplement his § 2255 petition in light of *Johnson*, but [ruled] that supplemental claim [] without merit." (Docket Entry 58 at 2; see also id. ("[Petitioner's] *Johnson* claim has been foreclosed by the Fourth Circuit, which has held that Hobbs Act robbery constitutes a crime of violence predicate for [a] § 924(c) conviction. [Petitioner] was convicted of seven Hobbs Act robberies, and those robberies constitute crimes of violence." (internal citation omitted) (citing United States v. Mathis, 932 F.3d 242, 266 (4th Cir.), cert. denied sub nom., Uhuru v. United States, ___ U.S. ___, 140 S. Ct. 639 (2019), and Stokes v. United States, ___ U.S. ___, 140 S. Ct. 640 (2019), for proposition "that Hobbs Act robbery constitutes a crime of violence under the force clause of § 924(c)")).) That order also denied Petitioner's other habeas claims. (See Docket Entry 58 at 2-6.) When he sought "to appeal [that] order denying relief on his [Section] 2255 motion" (Docket Entry 68 at 2), the Fourth Circuit (by opinion issued

---

¹(...continued)
United States v. Mathis, 932 F.3d 242, 263 (4th Cir. 2019) (citing United States v. Davis, ___ U.S. ___, 139 S. Ct. 2319 (2019)), cert. denied sub nom., Uhuru v. United States, ___ U.S. ___, 140 S. Ct. 639 (2019), and Stokes v. United States, ___ U.S. ___, 140 S. Ct. 640 (2019). As to Petitioner's Johnson claim, the Supreme Court's ruling in Davis "limited [this Court] to considering whether the [predicate offense for his Section 924(c)] conviction[] qualif[ied] as [a] crime[] of violence under [Section 924(c)'s] force clause," id. at 263-64.

September 4, 2020) "independently reviewed the record and conclude[d] that [Petitioner] ha[d] not made the requisite showing [to appeal]" (id.; see also id. ("When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong.")). "Accordingly, [the Fourth Circuit] den[ied] a certificate of appealability and dismiss[ed] the appeal." (Id.)

Six months after the Fourth Circuit's dismissal of that appeal (and on the anniversary of this Court's underlying denial on the merits of Petitioner's habeas claims), the Clerk docketed the instant Motion (dated as delivered to prison officials for service by mail on February 24, 2021). (See Docket Entry 78 at 1, 14.)

## DISCUSSION

With the instant Motion, Petitioner "move[d] this Court to correct its previous judgment which resulted in a subsequent [sic] misinterpretation in law based on a recent Fourth Circuit case, United States v. Taylor, 978 F.3d 73 (4th Cir. 2020), [amended, 979 F.3d 203 (4th Cir. 2020), cert. petition filed, No. 20-1459 (U.S. Apr. 16, 2021),] which held that attempted Hobbs Act [r]obbery is not categorically a crime of violence . . . ." (Docket Entry 78 at 1; see also id. ("Count Fourteen was based on [Petitioner's] attempted Hobbs Act robbery in Count Thirteen of the [I]ndictment. Therefore, under current Fourth Circuit precedence [sic], [his

8

Section] 924(c) conviction no longer stands because it is not premised on a crime of violence." (internal brackets omitted)).) Specifically, the instant Motion contends that "this Court should set aside Petitioner's [Section] 924(c) conviction and remand [sic] for further proceedings as this Court deems necessary . . . ." (Id. at 13; see also id. at 1 ("request[ing] that this Court set aside its previous final judgment to his [Section] 2255 motion based on a misinterpretation of the law which was caused by an intervening change in Fourth Circuit law").) The instant Motion grounds that contention on "Rule 60(b) [which] provides relief from prior judgments or orders for the following reasons[:] 'mistake, inadvertence, surprise, or excusable neglect,' pursuant to Rule 60(b)(1) Fed. R. Civ. P." (Docket Entry 78 at 1; see also id. at 13 (arguing that "change in Circuit Law clearly demonstrates that this Court inadvertently denied Petitioner's Johnson/Davis claim based on an incorrect interpretation of law" and that "the Court mistakenly found that Petitioner's [Section] 924(c) [conviction] could be attached to any of the Hobbs Act robberies cited in the [I]ndictment when, clearly, the charging document specifically held that the [Section] 924(c) offense that Petitioner pled guilty to was unequivocally based on the attempted Hobbs Act robbery").)[2]

---

[2] The instant Motion declares that "th[e Fourth] Circuit has observed that a mistake within the meaning of clause (1) of Rule 60(b) authorizing relief from judgmnet [sic] may include a mistake made by the Court itself." (Docket Entry 78 at 4 (errant ellipsis (continued...)

9

"Rule 60(b) applies to § 2255 proceedings, but only 'to the extent that it is not inconsistent with' applicable statutory provisions and rules. Therefore, a Rule 60(b) motion in a habeas proceeding that attacks 'the <u>substance</u> of the federal court's <u>resolution</u> of a claim <u>on the merits</u>' is not a true Rule 60(b)

---

²(...continued)
omitted).) In support of that characterization of Fourth Circuit law, the instant Motion cites "<u>Ailcens [sic] v. Ingram</u>, 652 F.3d 496, 511 (4th Cir. 2011), citing <u>United States v. Williams</u>, 674 F.3d [sic] 310, 313 (4th Cir. 1982)." (Docket Entry 78 at 4.) The cited page from <u>Aikens</u> falls within a dissenting opinion, which does (in a footnote on the preceding page) characterize <u>Williams</u> as does the instant Motion. See <u>Aikens</u>, 652 F.3d at 510 n.7 ("Notably, we have also observed that a 'mistake' within the meaning of clause (1) of Rule 60(b) . . . may include a mistake made by the court itself." (citing <u>Williams</u>, 674 F.2d at 313)). A close reading of the plain language of <u>Williams</u>, however, confirms that the Fourth Circuit did <u>not</u> therein <u>hold</u> that Rule 60(b)(1) encompasses legal mistakes by courts (in addition to litigation mistakes by parties and attorneys), but rather simply acknowledged the reality that some other courts had so held. See <u>Williams</u>, 674 F.2d at 313 ("In certain limited circumstances, the word 'mistake' in Rule 60(b) has indeed been read to include mistakes by the court." (citing <u>Tarkington v. United States Lines Co.</u>, 222 F.2d 358 (2d Cir. 1955))); see also <u>Malagrida v. Holland</u>, No. 93-1381, 19 F.3d 1429 (table), 1994 WL 89336, at *4 (4th Cir. Mar. 21, 1994) (unpublished) (discussing circuit split "on whether Rule 60(b)(1) motions allow a district court to review allegedly erroneous conclusions of law," but finding no need to resolve issue in that case); <u>Taylor v. Commonwealth of Va., Dep't of Transp.</u>, 170 F.R.D. 10, 11 (E.D. Va. 1996) ("The Fourth Circuit has suggested that 'mistake' in this context may include legal errors of the deciding court. It has not, however, decided the question."); <u>Moeller v. D'Arrigo</u>, 163 F.R.D. 489, 492 (E.D. Va. 1995) (same) (citing <u>Williams</u> and <u>Malagrida</u>). This Court similarly need not resolve that issue in this instance, because (for reasons detailed in the Discussion section) the instant Motion constitutes an unauthorized, successive Section 2255 motion (not a true motion under Rule 60(b)(1)) and, even if the instant Motion did legitimately invoke Rule 60(b)(1), it would fall short on the threshold elements applicable to all Rule 60(b) motions (without regard to whether it satisfied the further requirements of Rule 60(b)(1)).

motion, but rather a successive habeas petition." McRae, 793 F.3d at 397 (emphasis added) (internal brackets and citation omitted) (first quoting Rule 12, Rules Governing Section 2255 Cases, and then quoting Gonzales, 545 U.S. at 531-32). Here (as shown above), "Petitioner seeks to reargue the merits of his earlier § 2255 [m]otion based on a recent case. . . . Petitioner does not seek to remedy a defect in the collateral review process or other non-merit aspect of the prior ruling on collateral review . . . ." Johnson v. United States, No. 1:10CR332-5, 1:16CV1199, 2016 WL 7638289, at *1 (M.D.N.C. Oct. 6, 2016) (unpublished) (emphasis added), recommendation adopted, 2016 WL 7638290 (M.D.N.C. Nov. 10, 2016) (Osteen, C.J.), aff'd, 677 F. App'x 142 (4th Cir. 2017); see also United States v. Zater, Crim. No. 3:00-626, 2017 WL 6731505, at *2 (D.S.C. Oct. 11, 2017) (unpublished) ("Although [the petitioner's] motion alleges a defect in the adjudication of his original § 2255 motion, in reality it attacks his sentence. He argues . . . summary judgment should not have been granted. However, this is not an allegation of a defect in the collateral review *process*, but an attack on the substance of th[e] court's resolution of his claim on the merits." (internal footnote omitted) (italics in original)), aff'd, 719 F. App'x 269 (4th Cir. 2018).

As a result, pursuant to McRae, "[t]he [instant] Motion [] must be construed as a motion to vacate sentence under [] § 2255." Johnson, 2016 WL 7638289, at *1; see also Zater, 2017 WL 6731505,

11

at *2 ("[T]his motion is in actuality a § 2255 motion."). "However, the [instant] Motion cannot be further processed [in this Court] because, as stated above, Petitioner previously attacked the same conviction and sentence in a § 2255 motion. Consequently, Petitioner must move in the [] Fourth Circuit for an order authorizing this [C]ourt to consider the [instant] Motion . . . ." Johnson, 2016 WL 7638289, at *1; see also McRae, 793 F.3d at 397 ("A successive habeas petition may not be filed in district court without preauthorization from a court of appeals under § 2244(b)(3)(A)."). The instant Motion does not allege that Petitioner has obtained such authorization (see Docket Entry 78 at 1-13), and the Docket reflects none (see Docket Entries dated Mar. 5, 2020, to present). "Because of this pleading failure, th[e instant] Motion should be . . . dismissed." Johnson, 2016 WL 7638289, at *1; see also Zater, 2017 WL 6731505, at *2 ("The requirement of filing a motion in the court of appeals (in this instance, the Fourth Circuit) for permission and securing permission to file a second or successive motion is jurisdictional. Therefore, [the petitioner's] failure to secure permission from the Fourth Circuit [] prior to filing this § 2255 motion is fatal to any action in this court. [The petitioner's] motion is dismissed as this court is without jurisdiction to consider it.").

In the alternative, to the extent this Court opts to address the instant Motion under Rule 60(b), the Court should deny relief.

12

"[B]efore a party may seek relief under Rule 60(b), a party first must show timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Dowell, 993 F.2d at 48 (internal quotation marks omitted). Accepting that (if allowed to plead anew at this moment) Petitioner could mount a meritorious defense to Count Fourteen under the Fourth Circuit's recent ruling in Taylor,[3] he cannot satisfy the other three threshold elements for Rule 60(b) relief.

First, "[t]he Supreme Court explained in *Gonzalez* and its predecessors, such as *Ackermann v. United States*, 340 U.S. 193 (1950), that relief under Rule 60(b) is proper only under extraordinary circumstances--and it held in both *Gonzalez* and *Ackermann* that legal developments after a judgment becomes final do

---

[3] As the subsequent history accompanying the full citation to Taylor (in the Discussion above) reveals, the Supreme Court soon will have to decide whether it will review the Fourth Circuit's ruling that attempted Hobbs Act robbery does not constitute a crime of violence for purposes of Section 924(c). The uniform (and recently expanded) line of circuit authority to the contrary, see United States v. McCoy, 995 F.3d 32, 57 (2d Cir. 2021) ("hold[ing] that Hobbs Act attempted robbery qualifies as a crime of violence under § 924(c)"); United States v. Walker, 990 F.3d 316, 324-25 (3d Cir. 2021) ("The Fifth, Seventh, Ninth, and Eleventh Circuits have all held that attempted Hobbs Act robbery is categorically a crime of violence under the elements clause of § 924(c). . . . The Fourth Circuit disagreed . . . . [W]e join the courts that hold attempted Hobbs Act robbery is categorically a crime of violence."), provides some reason to believe that the Supreme Court may grant certiorari as to Taylor, see U.S. Sup. Ct. R. 10 (listing fact that "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter" as first among small handful of illustrations "indicat[ing] the character of the reasons the [Supreme] Court considers" when evaluating certiorari petitions).

13

not qualify as extraordinary."  Hill v. Rios, 722 F.3d 937, 938 (7th Cir. 2013) (emphasis added) (parallel citation omitted); see also Teague v. Lane, 489 U.S. 288, 308 (1989) (plurality opinion) ("[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule."); United States v. Doyle, Crim. No. 3:94-46, 2013 WL 5488573, at *1 (D. Minn. Oct. 2, 2013) (unpublished) ("[A] party cannot use Rule 60(b) to challenge a prior court ruling based on subsequent changes in the law.").  Applying that principle here, the Court should conclude as follows:  the instant Motion relies on Taylor, a "legal development[] after [this Court's] judgment [denying Petitioner's Johnson/Davis claim] became final[,[4] but such developments] do not qualify as extraordinary [circumstances]," Hill, 722 F.3d at 938, and Petitioner therefore cannot secure relief under Rule 60(b), see generally Dowell, 993 F.2d at 48.

Second – even if litigants could use Rule 60(b) to challenge the substance of merits-related rulings by invoking later decisions in other cases – because (A) Petitioner filed the instant Motion long after the time to appeal the denial of his Johnson/Davis claim had past (indeed long after the rejection of such appeal) and

---

[4] As set out in the Introduction, the Court (per Judge Eagles) denied Petitioner's habeas claims (including his Johnson/Davis claim) on March 5, 2020, and the Fourth Circuit dismissed his appeal of that denial on September 4, 2020.  The Fourth Circuit decided Taylor on October 14, 2020, and amended that decision on November 4, 2020.  See Taylor, 979 F.3d at 203.

14

(B) the instant Motion asserts that, in denying his Johnson/Davis claim, "the Court committed an error of law, [the instant M]otion is untimely," United States v. Salamanca, No. 3:11CR255, 2014 WL 108899, at *3 (E.D. Va. Jan. 10, 2014) (unpublished) (emphasis added), appeal dismissed, 585 F. App'x 264 (4th Cir. 2014). More particularly, although (in general) an outer limit of "no more than a year after the entry of the judgment or order" applies to "motion[s] under Rule 60(b)[(1)]," Fed. R. Civ. P. 60(c)(1), "a [Rule] 60(b) motion is not a substitute for an appeal or a means to enlarge indirectly the time for appeal," Moeller v. D'Arrigo, 163 F.R.D. 489, 493 (E.D. Va. 1995) (internal quotation marks omitted). "[W]ithout a limitation upon the applicability of [Rule] 60(b)(1), . . . [a party] could raise its arguments of legal error again with the district court at any time during the one-year period [generally allowed by Rule 60(c)(1)] and then appeal from that subsequent decision, if necessary. This would essentially turn Rule 60(b) into an alternative appeal provision." Id. "Because . . . [Rule] 60(b)(1) was not intended to be an alternative appeal provision, the Court [should] not hear Rule 60(b)(1) motions alleging an error of law beyond the expiration of the time for appeal." Id.; accord, e.g., Coleman v. Chase Bank, No. 3:14CV101, 2014 WL 4161986, at *3 n.5 (E.D. Va. Aug. 19, 2014) (unpublished). The instant Motion thus falls short on the timeliness element of Rule 60(b)'s threshold test. See generally Dowell, 993 F.2d at 48.

15

Third (and finally), the instant Motion does not "show . . . a lack of unfair prejudice to the opposing party," Dowell, 993 F.2d at 48 (internal quotation marks omitted). In that regard, "[a]s [the Supreme Court] ha[s] explained, inroads on the concept of finality tend to undermine confidence in the integrity of [court] procedures and inevitably delay and impair the orderly administration of justice." Custis v. United States, 511 U.S. 485, 497 (1994) (internal brackets and quotation marks omitted). Coordinately, "finality [] is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." Teague, 489 U.S. at 309; see also United States v. Fugit, 703 F.3d 248, 252 (4th Cir. 2012) ("underscor[ing] . . . the interest of the criminal justice system in the finality of convictions, an interest repeatedly confirmed [by] the Supreme Court").

"[W]hen a guilty plea is at issue, the concern with finality served by limitation on collateral attack has special force." Custis, 511 U.S. at 497 (internal quotation marks omitted). Of particular significance here, Petitioner (as shown in the Introduction) faced the prospect of conviction at trial for six additional Section 924(c) counts (all predicated on Hobbs Act robbery charges that undisputedly constitute crimes of violence and undisputedly involved brandishing of a firearm); as a result, in the words of his counsel at sentencing, "had [Petitioner] gone to

16

trial and been convicted of all counts he would have been facing life in prison for all intents and purposes" (Docket Entry 23 at 40; see also id. at 40-41 ("As [Petitioner's counsel] alluded to, if [Petitioner] had gone to trial . . . and been convicted, because those [Section] 924(c) counts after the first one [we]re 25-year mandatory minimum consecutive to each other, he would have faced more than a hundred years in prison . . . ."); Docket Entry 49, ¶ 117 (documenting that Plea Agreement spared Petitioner exposure to "additional mandatory consecutive sentences of 25 years" on "Counts Two, Four, Six, Eight, Ten, and Twelve" (underscoring omitted)). "[Petitioner], in other words, was lucky to receive the deal that he did." Fugit, 703 F.3d at 260 (emphasizing that, "had [the defendant] proceeded to trial, he would have undoubtedly opened himself up to [conviction on] multiple additional charges").

Despite the fact that (as a function of his acceptance of that plea deal more than eight years ago) Petitioner "already got[] a tremendous break" (Docket Entry 23 at 40), and after exhaustively litigating his convictions and sentence to final judgments before both this Court and the Fourth Circuit, both on direct appeal and collateral review (as detailed in the Introduction), Petitioner now has invited the Court to employ a civil procedure rule to invalidate his guilty plea based on a legal ruling that post-dates all of that criminal and post-conviction litigation. The Court should decline that invitation, because "[p]leading guilty

17

generally involves a conscious decision to accept both the benefits and burdens of a bargain.  That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase."  <u>Fugit</u>, 703 F.3d at 260.  Simply put, permitting Petitioner to utilize Rule 60(b) to undo his Plea Agreement at this late date based on changes in the legal landscape would unfairly prejudice the United States (and the citizenry it represents).  <u>See, e.g.</u>, <u>Edwards v. Vannoy</u>, ___ U.S. ___, ___, 141 S. Ct. 1547, 1554-55 (2021) (recognizing that "retrials years after the crimes occurred would require significant [prosecutorial] resources," that prosecutors "may not be able to retry some defendants at all because of lost evidence, faulty memory, and missing witnesses," that, "[w]hen previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer available, the public suffers, as do the victims," and that, "[e]ven when the evidence can be reassembled, conducting retrials years later inflicts substantial pain on crime victims" (internal quotation marks omitted)).

CONCLUSION

The instant Motion "attacks the substance of th[is C]ourt's resolution of a [prior habeas] claim on the merits [and thus] is not a true Rule 60(b) motion, but rather a successive habeas petition," <u>McRae</u>, 793 F.3d at 397 (internal quotation marks omitted); accordingly, it "may not be filed in [this C]ourt without

18

preauthorization from [the Fourth Circuit]," id., which neither the instant Motion nor the record reflects.  If not deemed an unauthorized, successive motion under Section 2255, the instant Motion fails as a matter of law under Rule 60(b), for want of an adequate, threshold "show[ing of] timeliness, . . . lack of unfair prejudice to the opposing party, and exceptional circumstances," Dowell, 993 F.2d at 48 (internal quotation marks omitted).

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 78) be dismissed as a successive Section 2255 motion filed without proper authorization from the Fourth Circuit (or, alternatively, denied for failure to satisfy the threshold requirements for relief under Rule 60(b)).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
June 2, 2021